UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MUTOMBO KANKONDE, M.D.<br>    *Plaintiff*, | )<br>)<br>) | |
| *vs.* | )<br>) | 1:11-cv-01291-JMS-TAB |
| RICHMOND CANCER & BLOOD DISEASE CENTER, INC., and BHARAT AGRAWAL, M.D.,<br>    *Defendants*. | )<br>)<br>)<br>) | |

### **ORDER**

Presently before the Court in this diversity action is the Motion to Dismiss filed by Defendant Richmond Cancer & Blood Disease Center, Inc. ("RCBDC"), and Dr. Bharat Agrawal. [Dkt. 14.][1]

#### **ALLEGATIONS IN THE COMPLAINT**

Although Dr. Agrawal offered the Plaintiff, Dr. Mutombo Kankonde, a hematologist/oncologist position at RCBDC, Dr. Kankonde initially declined. [Dkt. 1 ¶¶11, 13.] Dr. Kankonde told Dr. Agrawal that he had another, more lucrative, offer in New York. [*Id.* ¶13.] After Dr. Kankonde provided Dr. Agrawal with a copy of the other offer, Dr. Agrawal said that RCBDC would match the salary from the other offer and "that he would earn between $600,000 and $800,000 per year. Dr. Agrawal told Dr. Kankonde that the bonuses [available from the other offer] were 'nothing' compared to what Dr. Kankonde would make as a partner." [*Id.* ¶14.] Relying upon those representations, Dr. Kankonde accepted a two-year employment contract with RCBDC and turned down the other offer. [*Id.* ¶15.]

---

[1] The Plaintiff is alleged to be a Texas citizen, while the Defendants are alleged to be Indiana citizens. [Dkt. 1 ¶¶2-4.]

In April 2010, five months after accepting RCBDC's employment contract, Dr. Kankonde purchased land from Dr. Agrawal for $140,000, and made $50,000 in improvements so that he could build a home on it. [*Id.* ¶21.] In entering into that real estate contract, Dr. Kankonde "relied upon Dr. Agrawal's representation that Dr. Kankonde would be offered partnership with RCBDC" after his two-year contract expired. [*Id.* ¶22.]

Unbeknownst to Dr. Kankonde as he was negotiating his employment and real estate contracts, RCBDC was simultaneously engaging in business negotiations with Reid Hospital. [*See id.* ¶¶16, 26.] Those negotiations fell through; in May 2011, RCBDC announced that it would close its doors in September 2011 because Reid Hospital had decided to open a competing cancer center. [*Id.* ¶27.]

Dr. Kankonde has sued Dr. Agrawal and RCBDC for alleged constructive fraud with respect to his employment contract because he was offered a two-year contract and the opportunity for partnership thereafter but was not told of RCBDC's negotiations with Reid Hospital. [*See* dkt. 16 at 1.] He has also sued Dr. Agrawal for constructive fraud and/or fraudulent inducement with respect to the real estate contract, again predicated on Dr. Agrawal's failure to disclose the existence of the RCBDC negotiations. [*See id.* at 2.]

## STANDARD OF REVIEW

When determining whether a complaint can withstand a motion to dismiss for failure to state a claim, the Court must accept as true all the complaint's non-conclusory allegations and draw all reasonable inferences from them in favor of the plaintiff. *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 570 (2007). Those well-pleaded allegations and reasonable inferences must "state a claim to relief that is plausible on its face." *Id.*[2]

Additionally where, as here, a complaint alleges fraud, the complaint must "state with particularity the circumstances constituting [the] fraud." Fed. R. Civ. Pro. 9(b). In other words, the complaint must plead "the who, what, when, where, and how: the first paragraph of any newspaper story." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990).

## DISCUSSION

The Court will first evaluate Dr. Kankonde's constructive-fraud claim against RCBDC and Dr. Agrawal over his employment contract with RCBDC. The Court will then evaluate his constructive-fraud and fraudulent-inducement claims against Dr. Agrawal over his contract to purchase the real estate.

### A. The Employment Contract with RCBDC

Dr. Kankonde concedes, [dkt. 16 at 5], that his claim of constructive fraud over his employment contract has five elements:

(1) a duty existing by virtue of the relationship between the parties;

(2) a violation of that duty by the making of deceptive material misrepresentations of past or existing facts or remaining silent when the duty to speak exists;

(3) reliance thereon by the complaining party;

(4) injury to the complaining party as a proximate result of that reliance; and

(5) the gaining of an advantage by the party to be charged at the expense of the complaining party.

*Town & Country Homecenter v. Woods*, 725 N.E.2d 1006, 1011 (Ind. Ct. App. 2000) (quotation omitted).

---

[2] The "no set of facts" test from *Conley v. Gibson*, 355 U.S. 41 (1957), no longer remains good law. *Twombly*, 550 U.S. at 563. Thus, although Dr. Kankonde seeks to invoke it in his Response, [*see* dkt. 16 at 3], the Court will not apply that test here.

The Court finds that because Dr. Kankonde cannot establish the first element—a duty between him and the Defendants—his claim for constructive fraud fails. While Dr. Kankonde is correct that, unlike with most other contracts, Indiana law will imply a duty of good faith and fair dealing into employment contracts, *e.g.*, *Allison v. Union Hosp., Inc.*, 883 N.E.2d 113, 123 (Ind. Ct. App. 2008) (citations omitted) (noting Indiana's "reluctance" to expand the types of contracts subject to the implied duties), that rule has no application here. The "duty of good faith and fair dealing" in employment contracts has, thus far, regulated only the contracts' "performance and enforcement." *Weiser v. Godby Bros.*, 659 N.E.2d 237, 240 (Ind. Ct. App. 1995). But here Dr. Kankonde seeks to impose that duty on contract negotiation, not performance and enforcement. Furthermore, with respect to Dr. Agrawal, he seeks to impose that duty on a person who was not even a party to the employment contract. [*See* dkt. 1 ¶29 (alleging his contract was "with RCBDC").] This Court will not expand the scope of the duty of good faith and fair dealing beyond its current bounds. *See Estate of Moreland v. Dieter*, 576 F.3d 691, 700 (7th Cir. 2009) ("[T]hose who seek novel applications of state law would be better advised to bring their claims in the state courts." (quotation omitted)).[3]

### B. The Real Estate Contract with Dr. Agrawal

As indicated above, Dr. Kankonde asserts two types of fraud concerning his real estate contract with Dr. Agrawal: constructive fraud and fraud in the inducement.

Turning first to constructive fraud, the Court finds that that theory fails because Dr. Kankonde cannot show "a duty existing by virtue of the relationship between the parties," *Woods*, 725 N.E.2d at 1011 (quotation omitted), as with his prior claim.

---

[3] Given the failure of the claim on the duty issue, the Court need not address the Defendants' alternative arguments.

To the extent that Dr. Kankonde relies upon the buyer-seller relationship to supply a duty, he again presses Indiana law too far. A duty of good faith and fair dealing may only attach "in a buyer-seller relationship [when] one party … [is] in the unique possession of knowledge not possessed by the other and … thereby enjoy[s] a position of superiority over the other." *Mullen v. Cogdell*, 643 N.E.2d 390, 401 (Ind. Ct. App. 1994) (collecting cases). Dr. Kankonde has cited no case, nor has the Court found any on its own, where the knowledge allegedly concealed was unconnected to the land. *See, e.g.*, *Stoll v. Grimm*, 681 N.E.2d 749, 758 (Ind. Ct. App. 1997) (finding constructive fraud over failure to disclose that the electrical lines were not safe for thirty amp usage). The Court will not break new ground in Indiana law. *See Dieter*, 576 F.3d at 700.

To the extent that Dr. Kankonde seeks to rely upon his status as an employee to supply the requisite relationship, recall that Dr. Agrawal was not a party to that employment contract; Dr. Kankonde was an employee of RCBDC. [*See* dkt. 1 ¶29.] Even if he were truly Dr. Agrawal's employee, that relationship still would not supply the duty element. Dr. Kankonde fails to allege that Dr. Agrawal exploited his position to obtain a benefit, whether in the purchase price or otherwise, as is required, *see, e.g.*, *Strong v. Jackson*, 777 N.E.2d 1141, 1146 (Ind. Ct. App. 2002) (listing as a necessary element "[w]here the relationship is one of principal and agent" that the transaction "resulted in an advantage to the dominant party in whom the subordinate party had reposed both their trust and confidence" (citation omitted)).

That leaves only Dr. Kankonde's other theory for voiding the real-estate contract, fraud in the inducement, which the Court also must reject. According to him, he can sue for fraud in the inducement "based on the premise that in selling a parcel of land to Dr. Kankonde to build his home, Dr. Agrawal had a duty to disclose information relevant to Dr. Kankonde's continued employment and future partnership with RCBDC." [Dkt. 16 at 12.] *See also Lightning Litho,*

*Inc. v. Danka Indus.*, 776 N.E.2d 1238, 1241 (Ind. Ct. App. 2002) ("Fraudulent inducement occurs when a party is induced through fraudulent misrepresentations to enter into a contract." (citation omitted)).  But the Court has already held, above, that Dr. Agrawal owed no duty to speak.  Additionally, significant time had lapsed between the partnership statements and the real-estate contract.  And even setting the delay aside, the statements about partnership prospects are not actionable in fraud.  *See Am. Heritage Banco, Inc. v. McNaughton*, 879 N.E.2d 1110, 1115 (Ind. Ct. App. 2008) ("Actual fraud may not be based on representations of future conduct, on broken promises, or on representations of existing intent that are not executed." (citation omitted)).  Because Dr. Kankonde does not allege any other actionable statements, his claim fails.

## CONCLUSION

Though common decency might have compelled Dr. Agrawal and/or RBCDC to disclose to Dr. Kankonde the negotiations between RBCDC and Reid Hospital, Indiana law as it currently exists imposed no legal duty to do so.  The Complaint fails to state a claim upon which relief can be granted; therefore, the Court **GRANTS** the Defendants' motion to dismiss, [dkt. 14].  Final judgment will enter accordingly.

02/08/2012

_____
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only:**

H. Joseph Cohen
BARRETT & MCNAGNY
hjc@barrettlaw.com

Philip J. Gibbons Jr.
GIBBONS JONES, P.C.
pgibbons@gibbonsjones.com

Andrew G. Jones
GIBBONS JONES P.C.
ajones@gibbonsjones.com